**Eddie Mitchell TASBY, et al., Plaintiffs,**

v.

**Dr. Linus WRIGHT, General Superintendent, Dallas Independent School District, et al., Defendants.**

**Civ. A. No. 3–4211–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 4, 1982.

**10**

Edward B. Cloutman, III, Mullinax, Wells, Baab, Cloutman & Chapman, Patrick A. White, Dallas Legal Services Foundation, Inc., Dallas, Tex., for plaintiffs.

Mark Martin and Robert H. Thomas, Strasburger & Price, Dallas, Tex., for DISD, Wright, et al.

Thomas I. Atkins, General Counsel, NAACP Special Contribution Fund, New York City, Ernest Lemuel Haywood, DeSoto, Tex., for NAACP (intervenor).

E. Brice Cunningham, Dallas, Tex., for Cunningham and Dockery (intervenors).

Joan T. Winn, Dallas, Tex., for Black Coalition to Maximize Education (intervenor).

James A. Donohoe, Gardere & Wynne, Dallas, Tex., for Brinegar, et al. (intervenors).

Robert L. Blumenthal and John Martin and George M. Kryder, III, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Curry, et al. (intervenors).

H. Ron White, H. Ron White & Associates, Dallas, Tex., for Dallas Alliance (amicus curiae).

## ORDER REGARDING TRI-ETHNIC COMMITTEE

SANDERS, District Judge.

In Section XI–C of its February 1, 1982, 542 F.Supp. 134, Judgment, the Court directed Intervenor Black Coalition to file a report "with specific recommendations on the role ... the Tri-Ethnic Committee should play in [implementing] this Judg-ment." The Court has reviewed the Coalition's report, filed April 29, 1982; the comment of Defendant Dallas Independent School District (DISD) thereon, filed May 24; and the Coalition's reply, received June 7. The DISD was the only party to file written comments on the Coalition's report.

The Coalition recommends, in substance, that the role of the Tri-Ethnic Committee ("the Committee") be strengthened. The DISD is of the view that the Committee's role should be modified. For the reasons set forth herein, the Court is of the opinion that the Committee should be dissolved.

The Committee was established by this Court in its first desegregation decree in August 1971. *Tasby v. Estes,* 342 F.Supp. 945. Its purpose was to "review operation of the transportation system, teacher assignment, majority to minority transfer rule, and the selection of school sites". 342 F.Supp. at 953. The Committee's existence was continued in the court's 1976 desegregation decree, *Tasby v. Estes,* 412 F.Supp. 1192. The Committee was directed to "continue receive input from the community regarding the desegregation of the DISD" and to "make reports to this Court at such times as the Committee deems necessary ... as to the implementation of [desegregation]". 412 F.Supp. at 1221.

The files of the Court reflect that since 1976 the Committee and the Court have tried from time to time to define more clearly the purpose of the Committee. These efforts have been unsuccessful and, as a consequence, the Committee has in recent years become inactive.

The dormancy of the Committee is similar to the experience of other such committees in school districts undergoing the process of desegregation. Denver, Boston, Dayton and many other school districts have either disbanded their tri-ethnic committees (usually after the first three or four years of desegregation implementation), or have reduced their functions to that of strictly court advisory groups, available for independent consultation if needed.

In general, tri-ethnic committees have historically had some or all of these roles:

(1) to evaluate compliance by the school district with the court's desegregation decree; (2) to handle individual complaints from parents and children concerning problems encountered in the desegregation process; (3) to facilitate community acceptance of desegregation and to provide the community (particularly, the minority community) a participating role in the desegregation process; and (4) to serve as a "sounding board" for the court. *See "The Character and Effectiveness of Citizen Monitoring Groups in Implementing Civil Rights in Public Schools,* Duke University Institute of Policy Sciences and Public Affairs (1981); Hochschild, *Can Citizen Monitoring Groups Help Judges Implement Desegregation? It Depends,* Princeton University (March 1982); *Viewpoints and the Guidelines on Court-Appointed Citizens Monitoring Commissions in School Desegregation,* Community Relations Service, U.S. Department of Justice (1977). The question currently before the court is whether these important roles in desegregation require, at this stage, a tri-ethnic committee. The Court is of the opinion that these responsibilities can be effectively handled by other means and that the committee is, therefore, no longer required.

Under the Court's February 1, 1982, Judgment, evaluation of DISD's compliance will be made by an external auditor who will provide an annual report to the Court. That report will be subject to public comment and public hearing. It will be based upon information provided semi-annually to the court by DISD, corroborated by the auditor. The Court believes that the information which DISD must provide under the February 1, 1982, Judgment will afford a reasonably objective measurement of DISD's desegregation progress and that the audit procedure is the most effective way to evaluate such progress.

The Court is aware that some feel that the Committee should exist if only to handle individual complaints, particularly those of minority parents and children. However, in recent years (January 1980–June 1982) the Committee has received a total of eleven individual complaints, and it appears that these have been satisfactorily investigated by the school district. Further, for several years the auditor's report has stated that DISD's disciplinary problems appear to be handled in a nondiscriminatory manner, and that formal disciplinary hearings are conducted by a tri-ethnic panel.

The Court does not minimize the important, even essential, role which the Committee played in earlier years in facilitating community acceptance of desegregation and providing minorities a meaningful participation in implementing desegregation. The Court has determined, however, that this function of the Committee has been accomplished, at least so far as a committee can be effective. The concept of desegregation is generally accepted in the Dallas Independent School District. Obviously, differences remain as to how school desegregation should be furthered and at what pace. These matters, however, are for the court, not for a committee. Too, the Court notes that minorities are well represented in the administrative echelons of DISD. Subject to the policy making role of the Board of Education, which has only three minority members, *see* Court's Order dated December 7, 1981, these minority administrators, in number and ability, can fairly be said to afford the minority community a substantial role in school affairs.

The Court is not unmindful of the possible importance of a tri-ethnic committee as a "sounding board" to reflect community viewpoint on the progress of school desegregation. Yet there is no way for the court to assure that a committee, no matter how fairly chosen, will represent or express all or even most points of view. At this juncture the Court is of the view that the parties to this litigation and their counsel, in open court, are the most reliable sounding board available.[1]

In sum, then, the Court is of the opinion that the original purposes of the Committee

---

1. The Community Relations Service of the U.S. Department of Justice is directly available to the court for a liaison and fact finding if need-

ed. The Community Relations Service has advised the court that several citizens-interest organizations have been established through

have either been accomplished or can be effectively handled by others. The Court has no new assignments for the Committee and the Committee has suggested none.[2] The DISD is progressing toward unitary status and the court does not anticipate any reversal of that progress. Of course, in the unlikely event of such a reversal, the Court would reconstitute the Committee and give it a new and expanded role. But the mere possibility of such a reversal of the present trend is not a sufficient reason to continue the Committee and its staff.

Accordingly, effective August 16, 1982, the Tri-Ethnic Committee is DISSOLVED. The Committee's staff should promptly organize the Committee's files and deliver them to the United States District Clerk.

SO ORDERED.

the years by DISD to stay abreast of community attitudes—*e.g.*, Community Organization Joint Action Committee (COJAC) and *The Network*. The Community Relations Service has also advised the court that DISD actively utilizes the PTA Presidents' Council (which has significant minority representation) to maintain communications between the district and the community. The Court recalls from evidence presented at the April-May 1981 hearing that still other similar organizations exist.

The Court concludes that there are a sufficient number of "sounding board" groups.

2. The Court has not overlooked the suggestion that the committee be empowered to go into schools to investigate complaints. However, in view of the negligible number of complaints filed with the committee in recent years, *see supra,* the Court does not regard this as sufficient reason to continue the committee. The Court notes, also, that DISD has always strenuously opposed giving the committee this power.